John Edward WRAY, Appellant,

v.

UNITED STATES, Appellee.

Marion GRAYSON, Appellant,

v.

UNITED STATES, Appellee.

Nos. 7363, 7367.

District of Columbia Court of Appeals.

Argued Jan. 16, 1974.

Decided Feb. 26, 1974.

Michael J. Walsh, Washington, D. C., appointed by this court, for appellant Wray.

Carlton E. Crotty, Washington, D. C., appointed by this court, for appellant Grayson.

Edward Ross, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., at the time the brief was filed, John A. Terry and James E. Joyner, Asst. U. S. Attys., were on the brief, for appellee.

Before GALLAGHER, YEAGLEY and HARRIS, Associate Judges.

GALLAGHER, Associate Judge:

By separate informations filed on February 24, 1973, appellants were charged as co-defendants with petit larceny.[1] Motions to suppress evidence were denied and appellants were tried jointly by a jury which found them guilty as charged. These appeals followed and were consolidated by order of this court.

Appellants' main contention here is the same as that pressed upon the court at the hearing on the motion to suppress, namely, that they were arrested upon less than probable cause in violation of their rights under the Fourth Amendment and that the evidence seized incident to that arrest was therefore improperly admitted at their trial. Disagreeing as we do with this contention, we affirm.[2]

---

1. D.C.Code 1973, § 22–2202.

2. Appellants also contend that the evidence in the case was insufficient to support the jury's verdict. We have considered this argument and find it to be without merit.

Viewing the evidence, as we must, in the light most favorable to the appellee, the facts are these. Officer Robinson was patrolling in his police vehicle in the area of 14th and Q Streets, N.W., at approximately 1:00 a. m. on February 24, 1973. He observed appellants standing at the corner of the intersection, apparently in conversation. As he approached in the scout car they walked off in opposite directions. About five minutes later appellants were seen together in apparent conversation at a nearby corner. Officer Robinson then circled the block and looked for them again. This time he saw a man at the corner of Kingman Place and Q Street. As he approached the individual, Officer Robinson observed that he was peering in various directions. The officer then recognized the individual as appellant Grayson and further observed that he was looking down Kingman Place and appeared to be saying something to somebody. Appellant Grayson then moved on and moments later appellant Wray emerged from Kingman Place. As the officer passed them separately in his vehicle, each gave him "hard and suspicious-like" stares.

About five minutes later, the officer again saw appellants as they walked together from an alley. Appellant Wray was now carrying an object in his right hand, rested against his hip. The object was inside a folded newspaper which failed to conceal it completely. As they approached, the officer, who was now on foot, was able to look into the open end of the newspaper and he observed what he believed was a tape player. The officer then approached the pair and was able to discern knobs on the object and "the slide—the little area where the indicators are." [3] The officer then stopped appellants and asked appellant Wray where he got the object. Appellant Wray replied that he had found it in the alley and Officer Robinson then asked, "Could I look at it?"

Appellant Wray unfolded the newspaper to reveal a small car radio with the wires twisted around it. The officer then asked appellant Grayson about the radio and he denied knowing appellant Wray and said that he was just walking through the alley.

The officer then frisked appellants to determine if they were carrying guns. Although he did not feel a gun he did feel a number of objects in appellant Wray's pockets. He thereupon asked both to empty their pockets on the trunk of his automobile. Appellant Grayson's pockets contained nothing except personal papers; appellant Wray's, however, revealed a bent coat hanger, several screwdrivers and a pair of pliers. Officer Robinson then detained them for questioning, searched them and placed them in the back of his police vehicle.

The officer drove around looking for an automobile that might have been broken into. Within ten to fifteen minutes he had discovered a Chevrolet with the door unlocked, the glove compartment torn out and the wires torn out from underneath the dash. He then called for a listing on the car so that he could attempt to locate the owner. [4]

D.C.Code 1973, § 23–581, provides in part:

(a)(1) A law enforcement officer may arrest, without a warrant having previously been issued therefor—

\*  \*  \*  \*  \*  \*

(B) a person whom he has probable cause to believe has committed or is committing an offense in his presence;

. . .

"We have here another of those moving street scenes where quick, reasonable action by the police is necessary else events will pass them by with the result, perhaps, of another crime committed which could

---

3. Officer Robinson was able to make these observations, even at this early hour, because the area is illuminated by high-intensity street lamps, colloquially "crime lights".

4. The owner of the auto later appeared and identified the radio as his.

have been prevented or solved." United States v. Frye, D.C.App., 271 A.2d 788, 790 (1970). Nonetheless, our statute and the Fourth Amendment require that no arrest may be made except upon probable cause. "Probable cause exists where 'the facts and circumstances within [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959) (citation omitted); *see also* Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). "Evidence required to establish guilt is not necessary. On the other hand, good faith on the part of the arresting officers is not enough." Henry v. United States, *supra.* "In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved." Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949).

We turn to the question of "whether prudent men in the shoes of [this officer] would have seen enough to permit them to believe that [appellants were] violating or had violated the law." Henry v. United States, *supra,* 361 U.S. at 102, 80 S.Ct. at 171. We think so.

Officer Robinson observed these appellants on four occasions prior to his confrontation with them. The first two encounters and observations were innocuous. On the third occasion he could reasonably infer, and did, that appellant Grayson was acting somehow as a lookout. On the next encounter, the officer observed appellant Wray carrying what appeared to be a tape deck (at about 1:00 a. m.). At this moment the officer properly determined that he should investigate by stopping appellants and making inquiries consistent with Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967). As the Supreme Court has observed:

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. [Adams v. Williams, 407 U.S. 143, 145, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972).]

The officer asked appellant Wray where he got the object (which the officer believed from observation to be a tape deck) and the response was that he had found it in the alley. This merited further inquiry and the officer asked him to display it.[5] The object displayed was a car radio with the wires twisted around it. In response to an inquiry, Grayson denied knowing Wray, which was highly improbable on the basis of the officer's prior observations. We conclude that at this point the officer was possessed of sufficient "facts and circumstances . . . to warrant a man of reasonable caution in the belief that an offense [had] been . . . committed." Draper v. United States, *supra,* 358 U.S. at 313, 79 S.Ct. at 333. Since we find the arrest was not inconsistent with constitutional commands, the pat down incident to it and the order to appellants to empty their pockets were reasonable under the Fourth Amendment. United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

5. Appellant Wray does not contend that his response to the officer's request to display the object was involuntary. In any event on this record such a contention would be without merit. *See* Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

Appellants argue, however, that the officer had no report of a crime as no one had reported the theft of a car radio at the time of their arrest. Though this is true it is not dispositive of the question of whether there was probable cause to believe a crime had been committed and that appellants were the individuals who had committed it.[6] The officer could have, and appears to have, concluded that the radio had been stolen within the period of about one hour in the early morning hours (1:00 a. m.) during which he had been observing appellants, given the fact that the radio did not appear until the fourth encounter. This belief was reasonable under the circumstances. There being no error requiring reversal, the convictions are affirmed.

Affirmed.

6. *See, e. g.*, Smith v. United States, D.C. App., 295 A.2d 64 (1972) ; Jenkins v. United States, D.C.App., 284 A.2d 460 (1971) ; Campbell v. United States, D.C.App., 273 A.2d 252 (1971) ; Bell v. United States, 102 U.S.App.D.C. 383, 254 F.2d 82, cert. denied, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958) ; United States ex rel. Frasier v. Henderson, 464 F.2d 260 (2d Cir. 1972).