**Charles M. DIXON, Jr., Appellant,**

**v.**

**UNITED STATES, Appellee.**

**William A. BABER, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**Joey C. ALEXANDER, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**Nos. 7366, 7368, 7399.**

District of Columbia Court of Appeals.

Argued March 20, 1974.

Decided May 20, 1974.

---

Ronald Kovner, Washington, D. C., appointed by this court, with whom Peter H. Wolf, Washington, D. C., also appointed by this court, was on the brief, for appellant Charles M. Dixon, Jr.

David Carey Woll, appointed by this court, for appellant William A. Baber.

John W. Sansing, Washington, D. C., appointed by this court, was on the brief for Joey C. Alexander.

E. Lawrence Barcella, Jr., Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Daniel J. Bernstein, Asst. U. S. Attys., were on the brief, for appellee.

Before NEBEKER, PAIR and HARRIS, Associate Judges.

PAIR, Associate Judge:

These are consolidated appeals arising out of the robbery of a tourist home in northeast Washington.

Appellants were charged in an eight-count indictment with burglary in the first degree while armed,[1] burglary in the first degree,[2] armed robbery,[3] robbery,[4] and assault with a dangerous weapon (ADW).[5] Appellant Dixon was additionally charged with two counts of possession of a prohib-

1. D.C.Code 1973, §§ 22–1801(a), 22–3202.

2. D.C.Code 1973, § 22–1801(a).

3. D.C.Code 1973 §§ 22–2901, 22–3202.

4. D.C.Code 1973, § 22–2901.

5. D.C.Code 1973, § 22–502.

ited weapon (PPW)[6] and one count of carrying a dangerous weapon (CDW).[7]

After a jury trial, appellants were found guilty of first degree burglary while armed, armed robbery, and assault with a dangerous weapon. Appellant Dixon was also found guilty of one count of PPW.[8] The court set aside the burglary I verdicts and entered judgments of guilty on the lesser included offenses of second degree burglary.[9] All sentences imposed were made to run concurrently.

On appeal appellant Alexander argues that the ADW conviction was merged with the armed robbery conviction. Appellant Baber makes a similar argument and, in addition, challenges the sufficiency of the evidence as to his involvement as an "aider and abettor." The argument of appellant Dixon is in substance that the conviction for armed robbery and second degree burglary will result in cumulative punishment for both the entry into the tourist home and the completion of the offense of armed robbery. We find each of the arguments unpersuasive and affirm in all respects the judgments of conviction.

The evidence presented at the trial was that on October 29, 1972, about 10:30 p. m., 59-year-old Willie McClain, a desk clerk at a tourist home located at 155—11th Street, N.E., opened the locked door and observed first two men (appellants Dixon and Alexander) and then a third man (appellant Baber) standing slightly off to one side.[10] The three men immediately rushed into the tourist home and Dixon, armed with a shotgun, seized McClain, shoved him into a room, struck him three times on the side of the head with the shotgun, and

then reached into his pocket and removed an envelope containing approximately $5. As McClain was being assaulted and robbed, he saw Alexander and Baber rush past the doorway down the hall. When McClain first approached the door of the tourist home, he fortuitously carried with him a small remote-control burglar alarm transmitter, which he activated by squeezing it as soon as the intruders burst into the home.[11] The police responded, arriving at the tourist home almost immediately thereafter. Alexander, who was standing at the door, observed the police as they approached the tourist home and called out, "Police, police." At this point Dixon reentered the room into which he had shoved McClain, pointed the shotgun at him in a threatening manner, and told him to lie down on the bed and again left the room.

As soon as the police entered the tourist home, McClain told them that he had been robbed and that Alexander was one of the robbers. He told them also that Baber, who was standing near the doorway of room numbered 18, was also one of the robbers. McClain and a number of police officers then entered another room and found Dixon hiding under the bed.

Officer Vacin of the Metropolitan Police Department testified that at approximately 10:30 p. m., October 29, 1972, he received a radio run for a holdup alarm at 155—11th Street, N.E. He was about one block away from that address at the time and arrived about the same time as Officer Reardon. Both officers went together to the front door of the premises and looked inside. Officer Vacin saw appellant Dixon look toward the door, turn and enter room numbered 18. Observing appellant Alexan-

---

6. D.C.Code 1973, § 22–3214(a) & (b).

7. D.C.Code 1973, § 22–3204.

8. The court had previously dismissed the other weapons charges (PPW & ADW).

9. The court ruled in this regard that the lobby or common areas of the tourist home were not within the burglary I statute and neither were the unoccupied rooms in the tourist home.

10. Appellants have never challenged their identification.

11. Wendell P. Gardner, owner of the tourist home, later explained that the remote-control security device was a radio transmitter which, when activated, starts a tape recorder which automatically calls him, the police and the burglar alarm company and reports that a robbery is in progress at the tourist home.

der near the door, the officer requested admission and Alexander opened the door. McClain then came into the hallway and told the officers that he had been robbed and that Alexander was one of the robbers. Officer Vacin stated that "[a]bout that same time Mister Baber peeked out of what was room 18 and looked down the hallway", and McClain indicated that Baber too was one of the robbers.

A number of other witnesses testified regarding various aspects of the case, including the recovery of the shotgun from behind a soft-drink machine in the tourist home; the recovery of the remote-control burglar transmitter from appellant Dixon's coat; an explanation of the working of the remote-control security system; and an explanation of the tourist home guest registration ledger, which indicated that none of the appellants was registered as a guest on that date.

■■■ We consider first the argument of appellants Alexander and Baber that the ADW and armed robbery convictions were merged. We have recently recognized that such a merger may occur as a matter of law. *See* Skinner v. United States, D.C. App., 310 A.2d 231 (1973). But that does not mean that merger must always result upon convictions for ADW and armed robbery. The trial court said in this connection:

. . . [T]he ADW offense was sent to the jury with the specific instruction that it could convict on the ADW charge only if it found that separate and apart from pointing the gun at the complaining witness, the complaining witness was beaten with the gun. The jury, on those specific instructions returned a verdict of guilty. Therefore, the assault with a dangerous weapon is not a lesser included offense within the armed robbery. It was an offense separate and apart from

the pointing of the gun which led to the taking of the $4. . . . [S]o the Court's view is with respect to the Defendant Dixon who the jury could find from the evidence was the defendant that administered the beating, there is an ample basis to sustain the conviction. . . .

■■■ Absent a showing to the contrary, we presume the jury followed the court's instructions.[12] Skinner v. United States, *supra*.

■■■ Likewise the court ruled on Baber's aiding and abetting argument, saying:

. . . As respects the other defendants, being found guilty on an aiding and abetting theory, the Court believes the question is controlled by Coleman v. United States . . . [114 U.S.App. D.C. 185, 313 F.2d 576 (1962)]. . . . [T]he jury could properly conclude that the defendants, each of them were aiders and abettors. . . .

In our opinion the court's ruling was correct. *See* Barnes v. United States, 127 U.S.App.D.C. 95, 381 F.2d 263 (1967); Turberville v. United States, 112 U.S.App. D.C. 400, 303 F.2d 411, cert. denied, 370 U.S. 946, 82 S.Ct. 1596, 8 L.Ed.2d 813 (1962). *See also* 1 Wharton's Criminal Law and Procedure § 114, Aiders and Abettors (Anderson ed. 1957).

With respect to appellant Dixon's argument that the burglary and robbery convictions amount to two convictions for the same crime, heavy reliance is placed on Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957). In that case the Supreme Court interpreted provisions of the Federal Bank Robbery Act (FBRA), 18 U.S.C. § 2113 (1959), which created and defined several crimes incidental or related to thefts from federally in-

---

12. We note that the government has conceded —once in its brief and again at oral argument—that there was a merger of the ADW

■■■

and armed robbery charges. For the reason pointed out above we reject both concessions.

sured or organized banks. The court, noting sparse legislative history, viewed the entry into the bank as merged with the robbery. This was because "[t]he gravamen of the offense is not in the act of entering, which satisfied the terms of the statute even if it is simply walking through an open, public door during normal business hours.[13] Rather the heart of the crime is the intent to steal. This mental element merges into the completed crime if the robbery is consummated." [352 U.S. at 328; 77 S.Ct. at 407; footnote renumbered.]

 We have no difficulty distinguishing *Prince, supra.* There the Supreme Court was concerned with a criminal statute designed to protect a single societal interest. In contrast, our robbery and burglary statutes codify the common law and protect distinct societal interests. One proscribes acts against the habitation and the other proscribes acts against the person. The issue as to whether housebreaking and robbery convictions could stand together was answered in the affirmative years ago. *See* Irby v. United States, 129 U.S.App.D.C. 17, 390 F.2d 432 (en banc, 1967). *See also* United States v. Butler, 149 U.S.App. D.C. 300, 462 F.2d 1195 (1972); Weeks v. United States, D.C.App., 252 A.2d 907 (1969). *Compare* Manning v. United States, D.C.App., 270 A.2d 504 (1970).[14] It follows that the judgments of conviction appealed from should stand in all respects.

Affirmed.

13. "This distinguishes the unlawful entry provision in the Bank Robbery Act from a very similar provision relating to post-office offenses. 18 U.S.C. § 2115:

'Whoever *forcibly* breaks into or attempts to break into any post office, or any building used in whole or in part as a post office, with intent to commit in such post office, or building, or part thereof, so used, any larceny or other depredation, shall be fined . . . . (Italics supplied.)'

"This section was held to create an offense separate from a completed post-office theft. Morgan v. Devine, 237 U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153."

14. We note that under *Irby, supra,* appellants could have permissibly been sentenced to consecutive terms on the burglary and robbery convictions.