**George W. BATES, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 7572.**

District of Columbia Court of Appeals.

Argued Aug. 15, 1974.

Decided Oct. 29, 1974.
Rehearing and Rehearing en Banc
Denied Jan. 7, 1975.

Warren C. Nighswander, Washington, D. C., appointed by this court, for appellant. Robert Golten, Washington, D. C., also appointed by this court, entered an appearance for appellant.

E. Lawrence Barcella, Jr., Asst. U. S. Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, James F. McMullin and John C. Lenahan, Asst. U. S. Attys., were on the brief, for appellee. Joel Du-Boff, Asst. U. S. Atty., also entered an appearance for appellee.

Before KELLY and KERN, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

This appeal is from judgments of conviction for armed robbery (D.C.Code 1973, §§ 22–2901, 22–3201) and assault with a dangerous weapon (D.C.Code 1973, § 22–502). Sentences of fifteen years for the armed robbery and five years for the assault with a dangerous weapon were imposed and the sentences were made to run consecutively to each other and consecutively to any other sentence then being served.[1]

The armed robbery and assault occurred at the Littlejohn Furniture Store, 2471 18th Street, N. W., in the late afternoon of December 20, 1972. A short time thereafter appellant was apprehended in the area, returned to the store, identified as the robber and found to be in possession of a man's wristwatch, which was one of the items taken during the robbery.

Assigned as error on this appeal is the ruling of the trial court on a motion to suppress as evidence the on-the-scene and in-court identifications and the watch seized from appellant after he was transported to the store and identified. Error is assigned also in permitting the jury to render a separate verdict on the assault with a dangerous weapon charge and in sentencing appellant on such charge to a prison term to run consecutively with the sentence for armed robbery. Finding no error requiring reversal, we affirm the judgments of conviction.

Viewing the evidence as we must in the light most favorable to the government,[2] what appears is that sometime in the midafternoon of the day involved, a man, later identified as the appellant, entered the furniture store and expressed to Mrs. Lula Morton, the only employee on duty, an interest in furniture for an apartment. Mrs. Morton conducted appellant through the store, discussing with him the furniture on display. After about one-half hour, appellant left the store but returned a short time later and inquired of Mrs. Morton about rugs. Waiting until all other persons in the store had departed, appellant moved near the door, displayed a gun and said to Mrs. Morton, "get over to that drawer and give me the money. This is a holdup." Mrs. Morton opened the cash register, removed from the cash drawer all of the money and a man's wristwatch which she placed in a paper bag held by appellant. Appellant then required Mrs. Morton to lie on the floor behind the cash register as he attempted to find additional money in the lower drawer. Finding none, appellant demanded Mrs. Morton's purse and removed from it twenty-five dollars which he placed in the bag with the money and wristwatch taken from the cash register.

Still brandishing the gun, appellant forced Mrs. Morton to walk to the rear of the store behind a partition and demanded that she open her blouse. Appellant then searched around inside her garments and, finding nothing of value and apparently satisfied that there was nothing of value in that part of the store, he turned to leave but admonished Mrs. Morton by saying, "You better not come out here before I get out of here. I'm liable to shoot you."

As appellant was leaving the store, Mr. Littlejohn, the owner, walked in. Mrs. Morton, mindful of appellant's warning, did not move out into the store or speak but attracted Mr. Littlejohn's attention by gesturing vigorously and pointing to appellant as he walked out of the door. Observing Mrs. Morton's behavior, Mr. Littlejohn followed appellant, who commenced

1. At that time appellant was on parole, having been sentenced in 1966 to concurrent terms of five to fifteen years for housebreaking and three to ten years for assault with a dangerous weapon.

2. Ingram v. United States, 360 U.S. 672, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959); Wray v. United States, D.C.App., 315 A.2d 843 (1974); Jenkins v. United States, D.C.App., 284 A.2d 460 (1971); Hallman v. United States, 115 U.S.App.D.C. 350, 320 F.2d 669, cert. denied, 375 U.S. 882, 84 S.Ct. 154, 11 L.Ed.2d 113 (1963).

running in a northerly direction on 18th Street, N. W. As the pursuit continued, Mr. Littlejohn alerted a police officer who was seated in a scout car parked on 18th Street. The police officer joined in the pursuit but, shortly thereafter, returned and picked up Mr. Littlejohn and then drove about the immediate neighborhood.

Moments later Officers Ford and Clarkson, patrolling the same area in another police car, received a radio broadcast that "a citizen was chasing a Negro male dressed in dark clothing, east in the 1700 block of Euclid Street, N. W." Approximately one minute later, the two officers observed, in the 1600 block of Kalorama Road, N. W., a man who, in their opinion, answered the general description of the man mentioned in the police broadcast. What transpired then is set forth in considerable detail by appellant in his statement of the facts, which we accept.

Officer Ford and his partner, Officer Clarkson, immediately pulled their cruiser abreast of the appellant "and proceeded to question him about his wherabouts [*sic*], and who he was, where he was going". Appellant, who approached the car on his own and appeared to be breathing normally, explained to the officers that he had just come from "his girlfriend's house on 18th Street" and "was on his way to the 1400 block of Clifton".

During the time Officer Ford was questioning the appellant, another police cruiser pulled up with an officer from the Special Operations Division who "mentioned" to Officers Ford and Clarkson the address on 18th Street from which the reporting citizen had apparently come. The officers did not, however, know at this time whether any crime had actually been committed. Officer Ford then asked appellant to accompany him in the police car to the scene of the reported "incident". Before appellant got into the car, Officer Ford "conducted a courtesy search" of appellant and discovered a closed hawk-billed knife in appellant's right front pocket. Officer Clarkson then conducted a further "pat-down" and discovered a "blunt object" which Mr. Bates identified as his watch. Appellant then put the watch back in his pocket and was "placed" in the police vehicle by the officers.

The police vehicle then made a U-turn on Kalorama Road and proceeded back toward 18th Street, with Officer Clarkson driving and Officer Ford in the back seat next to appellant. At that point, the cruiser slowed to a stop looking for the address and another car, scout 89, pulled past and stopped in front of it, with the reporting citizen, Mr. Littlejohn, in the front seat. Mr. Littlejohn, the owner of a used furniture store at 2471 18th Street, N. W., then pointed to appellant in the back seat of Officer Ford's car and stated "that's him". Upon hearing this, Officer Ford advised appellant "of his rights" and Officer Clarkson went into the store at 2471 18th Street. At that point, Officer Clarkson learned for the first time, and advised Officer Ford upon his return, that there had been a robbery at that address. On learning this, Officer Ford placed appellant in handcuffs and transported him into the store where he was identified by the complaining witness, Lula Morten [*sic*], and again by Mr. Littlejohn. In addition, Officer Clarkson again took the watch from appellant's pocket and Mrs. Morten and Mr. Littlejohn both identified it as having been taken during the course of the robbery.

Appellant was then placed formally under arrest and transported to police headquarters. . . .

Appellant's sole contention of substance is that the on-the-scene identifications by Mrs. Morton and Mr. Littlejohn, together with the watch seized from his person after such identifications, were fruits of an arrest without probable cause and should have been suppressed as evidence.

What constitutes probable cause for arrest depends upon the facts and circumstances of the particular case. Bailey v. United States, 128 U.S.App.D.C. 354, 357, 389 F.2d 305, 308 (1967). In Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949), the Court said:

> In dealing with probable cause . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. . . .

*See also* Peterkin v. United States, D.C. App., 281 A.2d 567 (1971), cert. denied, 406 U.S. 922, 92 S.Ct. 1788, 32 L.Ed.2d 122 (1972); Cox v. United States, D.C.App., 256 A.2d 917 (1969); Lucas v. United States, D.C.App., 256 A.2d 574, 575 (1969).

Recently this court held that, "[p]robable cause exists where 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been . . . committed." Wray v. United States, D.C.App., 315 A.2d 843, 845 (1974), *quoting from* Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959). Crucial in the disposition of the question presented, therefore, is the totality of the information possessed by Officers Ford and Clarkson at the time of the arrest. Hinton v. United States, 137 U.S.App.D.C. 388, 391, 424 F.2d 876, 879 (1969).

We notice at the outset that appellant concedes ". . . that the stop . . . on the street for brief questioning as to his identity and present activity was permissible under the Fourth Amendment. Terry v. Ohio, 392 U.S. 1, 22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) [3] . . . [and that] the police might lawfully have kept him under some form of brief surveillance while awaiting further information with respect to the brief radio report." *Cf.* United States v. Horton, 142 U.S.App.D.C. 225, 440 F.2d 253 (1971). Thus, appellant's complaint is of an arrest which occurred subsequent to the initial confrontation and interrogation, when the officers restricted his movements by placing him in the police car for transportation to the scene of the incident. *See* Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959).

Appellant says, however, that subsequent to the initial confrontation the police received no additional information ". . . which might have led to a ripening of the stop into an arrest based on probable cause." *See in this connection* Menard v. Mitchell, 139 U.S.App.D.C. 113, 118 n.26, 430 F.2d 486, 491 n.26 (1970). Of course, by appellant's own admission, additional information was received by the officers and it was to the effect that the complaint which provoked the radio report originated at 2471 18th Street, N.W. This information, in our view, gave the officers reason to believe that some incident, the nature of which was at that time undisclosed, had occurred at the 18th Street address [4] causing a person answering the general description of appellant to flee and another person to pursue. It was then that the officers determined to transport appellant to that address for further inquiry and, in our view, the officers would have been derelict in the performance of their duty had they not undertaken to do so.

---

3. The Court said in *Terry, supra* at 22, 88 S.Ct. at 1880, that " . . . a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest."

4. The government insists that the officers were possessed of other information furnished by a "radio run" which identified the complainant as Mr. Littlejohn and the incident as an armed robbery. The difficulty with this is that appellant sought to introduce the "radio run" into evidence, but the government objected and the trial court sustained the objection.

But there was more than this. As Officers Ford and Clarkson proceeded with appellant to the 18th Street address, the police car in which Mr. Littlejohn was a passenger pulled alongside and Mr. Littlejohn, observing appellant, exclaimed, "There he is in there now."

Appellant says, however, that absent specific information that a crime had been committed the police were barred, on Fourth Amendment grounds, from arresting him without a warrant. We do not agree. In Adams v. Williams, 407 U.S. 143, 145–146, 92 S.Ct. 1921, 1923, 32 L.Ed. 2d 612 (1972), the Supreme Court made it clear that:

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. See *id.* [*Terry*], 392 U.S. at 23, 88 S.Ct., at 1881. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.
> . . .

Clearly, therefore, it is immaterial that the sum total of the information available to the officers when they placed appellant under arrest came from an unidentified victim of an undisclosed robbery and assault, since that fact is not inconsistent with the existence of probable cause for the arrest. *See and compare* Brown v. United States, 125 U.S.App.D.C. 43, 46, 365 F.2d 976, 979 (1966); Cox v. United States, *supra*. *See also* Smith v. United States, D.C.App., 295 A.2d 64, 67 (1972), cert. denied, 411 U.S. 951, 93 S.Ct. 1932, 36 L.Ed.2d 414 (1973).

As the court pointed out in Dixon v. United States, 111 U.S.App.D.C. 305, 306–307, 296 F.2d 427, 428–429 (1961):

> The decisive factors are that all the circumstances are to be considered together, in a sum total; that the circumstances to be considered are those of the moment; that the impression to be evaluated is the impression upon the mind of a reasonably prudent police officer; and that the impression made upon him by the circumstances is a reasonable belief that a crime has been . . . committed. . . . [Footnote omitted.]

Certainly the officers, based upon the information which had come to them through police channels, and ". . . conditioned by [their] observations and information, and guided by the whole of [their] police experience, reasonably could have believed that a crime had been committed by the person . . ." they had in custody. Jackson v. United States, 112 U.S.App.D.C. 260, 262, 302 F.2d 194, 196 (1962).

■ We conclude therefore, from the totality of the facts and circumstances disclosed by the record, that the officers had probable cause to arrest appellant and that the trial court did not err when it denied the motion to suppress as evidence the on-the-scene identification and the watch seized from appellant's person immediately thereafter.

■ Appellant's final contention, that the trial court erroneously permitted the jury to return a separate verdict on the assault with a dangerous weapon charge, is clearly without merit.

The evidence at trial was that after the armed robbery of the cash register of the store and the robbery of Mrs. Morton, appellant forced her, at gunpoint, to walk to the rear of the store behind a screen and open her blouse, after which he searched beneath her garments. Finding nothing of value, appellant turned to leave but warned Mrs. Morton saying, "you better not come

out before I get out of here. I'm liable to shoot you."

In Dixon v. United States, D.C.App., 320 A.2d 318 (1974), there were, as here, convictions for armed robbery and assault with a dangerous weapon. The jury was instructed in that case that it could return a verdict of guilty on the assault charge only if it found that, separate and apart from the armed robbery, the complaining witness was threatened by the pointed gun. On such instructions the jury returned a verdict of guilty, thus determining that the assault with a dangerous weapon was separate and distinct from the armed robbery and therefore not a lesser included offense. In affirming the judgments of conviction, this court said that while a merger of such offenses may occur as a matter of law ". . . that does not mean that merger must always result upon convictions for ADW and armed robbery." *Dixon, supra* at 321.

In the case at bar the trial court instructed the jury, without objection, that:

To point a dangerous weapon at another person in a menacing or threatening manner, or to use a weapon in a manner that would reasonably justify the other person in believing that the weapon might be immediately used upon him, constitutes an assault with a dangerous weapon.

Now, the only evidence that you may consider on the third count of the indictment with respect to whether or not an assault with a dangerous weapon was in fact committed . . . is that evidence relating to what happened at the rear of the store. That is because any conduct by whomever committed in this case in front of the store constituted an armed robbery. The conduct at the back of the store by whomever committed, constituted a separate offense of assault with a dangerous weapon or the Government's evidence tends to indicate that it did and thus you cannot mix up the evidence in the front of the store with the transaction which may have occurred at the back of the store to find the defendant guilty of the assault with a dangerous weapon.

So, with regard to the offense of assault with a dangerous weapon, you must deal only with that evidence pertaining to the alleged assault at the rear of the store.

■ We must indulge the presumption that the jury in its deliberations was obedient to the court's instructions. Consequently, when the jury returned a verdict of guilty on the assault with a dangerous weapon charge, the trial court properly exercised its statutory prerogative conferred by D.C.Code 1973, § 23–112, and imposed consecutive sentences.

While we must, therefore, affirm the judgments of conviction for armed robbery and assault with a dangerous weapon we, nevertheless, remand for the purpose of imposing minimum terms of imprisonment pursuant to the provisions of D.C.Code 1973, § 24–203.

So ordered.

KERN, Associate Judge (concurring):

The suppression issue in this case is very close and I am constrained to state with particularity my reason for agreeing with the result reached by the court.

Whenever a police officer stops a person on the street for brief questioning because of suspicious circumstances, as was true here, the Fourth Amendment requires that there be facts which the officer can articulate to justify his action. Such facts of course need not rise to the level of probable cause to believe a crime has been committed and the person stopped has committed it. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The officer here received a radio broadcast in his cruiser that "a citizen was chasing" a person of a certain description east in the 1700 block of Euclid Street. He was in

that immediate vicinity and a minute later he saw and stopped a person of that description—appellant. While the police officer was questioning appellant as to his identity and where he had been and where he was going—all proper under the authority of *Terry, see* Stephenson v. United States, D.C.App., 296 A.2d 606 (1972)—another police officer arrived on the scene and advised him of the address (which was nearby) of the citizen who was giving chase *and* who had turned in the report to the police. Although at that moment the officers did not know of the *specific* crimes that had in fact taken place at that address (i. e., armed robbery and assault with a dangerous weapon), it seems to me that they nevertheless had sufficient information [1] to constitute probable cause and justify the arrest of appellant which they effected by putting him into their car and transporting him back to the scene.

1. The fact that the citizen giving chase had *reported to the police* removes the reasonable probability that the incident was some sort of private altercation rather than the response of one who had suffered harm and was calling on law enforcement for assistance; and the fact that the police knew the address of that citizen added an element of trustworthiness to his report.