Charles **HEILIGH**, Appellant,

v.

**UNITED STATES**, Appellee.

Alphonso R. **GILLIS**, Appellant,

v.

**UNITED STATES**, Appellee.

Nos. 9209 and 9219.

District of Columbia Court of Appeals.

Argued Nov. 10, 1976.

Decided Oct. 20, 1977.

---

William J. Chen, Jr., Bethesda, Md., appointed by this court, for appellant in No. 9209.

Wallace E. Shipp, Jr., Columbia, Md., appointed by this court, for appellant in No. 9219.

Alexia Morrison, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Albert H. Turkus and John P. Hume, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, KERN and GALLAGHER, Associate Judges.

GALLAGHER, Associate Judge:

After a jury trial, appellants were each found guilty of four counts of armed robbery (D.C.Code 1973, §§ 22–2901, –3202), one count of assault with intent to commit robbery while armed (D.C.Code 1973, §§ 22–501, –3202), and one count of assault with a dangerous weapon (D.C.Code 1973, § 22–502).[1]

1. Two other persons with whom appellants were tried have not appealed.

In this appeal, both Gillis and Heiligh assign as error the failure of the trial court to grant a mistrial after the government introduced evidence that appellants had discussed the robbery with one of the complaining witnesses. Appellants contend that this evidence was discoverable under Super.Ct.Cr.R. 16(a) and that because their attorneys were not told of the existence of such evidence, appellants were denied a fair trial. In addition, appellant Heiligh complains that (1) the trial court violated his Sixth Amendment rights when it conducted a hearing on proposed jury instructions in his absence; (2) there was insufficient evidence to convict him of either assault with intent to commit robbery while armed or assault with a dangerous weapon and, in any event, the latter offense merged into the former; and (3) the cumulative effect of these errors denied him a fair trial. We affirm.

## I.

Four of the five complainants testified at trial[2] that on December 16, 1973, at approximately 6 p. m., they were gathered in the first floor hallway of an apartment building located at 3944 C Street, S.E., when three men came down into the hallway from the second floor. One of the men asked the complainants where he could get some narcotics and after a few words with complainants about a woman named "Cynthia" in this connection, the man became angry, brandished a pistol and asked them for their money. Another of the men produced a second pistol and all five complainants were searched and property was taken from three of them. One of the assailants, later identified as appellant Gillis, struck one of the complainants on the head with the butt of a pistol he was using. During the search of the victims, appellant Heiligh emerged from a second floor apartment, told the three robbers to "wait a minute," returned upstairs and came back with a sawed-off shotgun. All five complainants were then taken to the basement of the apartment

building and made to lie on the floor. They were searched again and money was taken from a fourth complainant. The robbers then left their victims in the basement with instructions not to get up. They waited about fifteen seconds and then went out to the front of the building where they saw their assailants getting into a car. Appellant Heiligh, armed with a shotgun, warned complainants to get back in the building. The robbers were unable to start the car and began walking up the street. One of the victims, Brady Cloyd, followed them and reported the incident to Officer John Williams who was in his patrol car at a nearby gas station. Within five minutes after the robbery, the four defendants were found by Officer Williams and Cloyd near a telephone booth. Cloyd immediately identified the four as his assailants. The appellants were identified by the other victims at pretrial lineups and in court.

The defenses presented by both appellants were misidentification and alibi. Heiligh testified that he arrived at Darlene Thomas' apartment at 3944 C Street, S.E., between noon and 1 p. m. on the afternoon of the robbery and that he left her apartment around 4:45 p. m. to go to a gas station because his car would not start. He testified he did not know appellant Gillis. Darlene Thomas testified that Heiligh spent the afternoon of December 16 in her apartment, but left around "dinner time" to go to a gas station. She also testified that she did not know Gillis and that Gillis had never been in her apartment.

Darlene Miles testified that appellant Gillis and the other two codefendants arrived at her apartment around 3 p. m. on December 16 and were still there when she left the apartment at 5:15 p. m. A friend of Miss Miles testified that she was in Miss Miles' apartment that afternoon and that she left with Gillis and the other codefendants at 5:45 p. m.

## II.

At trial one of the complainants, Marvin Dixon, testified that approximately

2. One of the complainants did not testify at trial, but evidence of the robbery of this individual was presented through the testimony of a co-complainant.

six months after the robbery appellants made certain inculpatory remarks to him. Dixon was invited to Darlene Thomas' apartment in June 1974, and shortly after arriving saw both appellants in the apartment. Appellant Heiligh asked Dixon whether he would "talk to his friends about having all the charges dropped" if he got back the property which had been taken. Appellant Gillis then returned to Dixon a watch that had been taken from him during the robbery.[3] Dixon also testified that he revealed his conversations with appellants in statements he gave to the police and to the prosecutor prior to trial.

Appellants announced surprise at this testimony and moved for a mistrial.[4] The motion was denied.[5] Appellants argue that this evidence was discoverable under Rule 16(a) which at the time of trial provided in part:[6]

> Upon motion of a defendant the court may order the prosecutor to permit the defendant to inspect and copy or photograph any relevant (1) *written or recorded statements or confessions made by the defendant, or copies thereof, within the possession, custody, or control of the government*, the existence of which is known, or by the exercise of due diligence may become known, to the prosecutor . . . . [Emphasis added.]

█ Rule 16(a) restricts discovery to written or recorded statements or confessions of the defendant. Appellants contend the rule also contemplates discovery of the statements of a victim setting forth his conversations with appellants. Our decision in *Robinson v. United States*, D.C.App., 361

A.2d 199 (1976), disposes of appellants' argument. There we held that Rule 16 does not require pretrial discovery of statements made by a defendant to third parties not government agents. These statements are producible, if at all, under the provisions of the Jencks Act, 18 U.S.C. § 3500(a) (1970). *See also United States v. Feinberg*, 502 F.2d 1180 (7th Cir. 1974), *cert. denied*, 420 U.S. 926, 95 S.Ct. 1122, 43 L.Ed.2d 396 (1975); *United States v. Kenny*, 462 F.2d 1205 (3d Cir.), *cert. denied sub nom., Kropke v. United States*, 409 U.S. 914, 93 S.Ct. 233, 34 L.Ed.2d 176 (1972).

Our interpretation of Rule 16(a) is reinforced by a recent amendment to the rule. Effective September 24, 1976, Super.Ct. Cr.R. 16(a) provides that upon request the government shall disclose to the defendant

> the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent . . . .

This amendment was adopted so that the Superior Court rule now parallels the federal rule which was similarly amended in 1975. We note that the federal rule was amended with the intention of liberalizing discovery for the defendant. The amended rule is evidence that the rule in force at the time of this trial was not intended to allow discovery of oral statements of the defendant to lay witnesses or victims.

### III.

Appellant Heiligh also alleges that he was denied his Sixth Amendment right to

---

**3.** The witness also testified that he saw Gillis shortly thereafter on Human Kindness Day. At that time Gillis stated to Dixon, "Everything is going to be all right, man," and walked away.

**4.** Appellants' attorneys were given an opportunity to hear the complainant's testimony during his voir dire out of the jury's presence. No motion to exclude the complainant's testimony as to appellants' statements was made at that *time.*

**5.** In denying the motion for a mistrial, the judge indicated that he would consider a request for a modest continuance to allow appel-

lants' attorneys to interview other witnesses who may have been present when the inculpatory remarks were made. Neither attorney responded to this.

**6.** The record indicates that appellants' attorneys utilized informal discovery procedures as required by Super.Ct.Cr.R. 16–II. The government complied with the request for informal discovery of the evidence subject to inspection and disclosure under Rule 16; consequently, no pretrial motions for discovery were filed by the defendants.

be present at trial when the court allowed a short discussion of the proposed jury instructions to proceed in his absence. At the close of proceedings on the day prior to Heiligh's absence, the trial court announced it would reconvene the proceedings at 9:30 a. m. to settle jury instructions. When appellant did not appear, the trial judge noted appellant's absence but stated he was reluctant to delay the jury any longer than necessary because they had been held over from their regular term to hear this case. Appellant's counsel then stated that he would waive Heiligh's appearance for the purpose of settling jury instructions. The record indicates appellant returned to the trial while the instructions were still being discussed and before the jury entered the courtroom.

■ One of the basic rights guaranteed by the Sixth Amendment is the accused's right to be present in the courtroom at every stage of trial. *Lewis v. United States*, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892). But like other rights this one is not absolute. In *Snyder v. Massachusetts*, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934), where a challenge to the defendant's absence was brought under the Fourteenth Amendment, the Supreme Court stated:

> [I]n a prosecution for a felony the defendant has the privilege under the Fourteenth Amendment to be present in his own person *whenever his presence has a relation, reasonably substantial, to the fullness of his opportunity to defend against the charge.* [*Id.* at 105–06, 54 S.Ct. at 332; emphasis added.]

In *Snyder*, the Court had before it the issue of whether the defendant had an absolute right to be present at a view by the jury of the scene of the crime. Concluding he did not, the Court found that defendant's presence would have been useless and that his interests were adequately represented by counsel.

■ It is still the rule today that where fundamental interests are not involved, the right to be present at trial is not violated. Thus, the Fourth Circuit recently held in *United States v. Gregorio*, 497 F.2d 1253 (4th Cir.), *cert. denied*, 419 U.S. 1024, 95 S.Ct. 501, 42 L.Ed.2d 298 (1974), that the reasons underlying the Sixth Amendment right to be present [7] were "not applicable to a purely legal conference on jury instructions." This rule makes sense. When a defendant is absent for such a short period of time [8] during which legal matters of this nature are discussed, there is little possibility of prejudice to the defendant.[9]

■ A defendant who voluntarily absents himself during the trial should not, by doing so, prevent the court from going forward. *United States v. Cureton*, 302 F.Supp. 1065 (D.D.C.1968), *aff'd*, 134 U.S. App.D.C. 144, 413 F.2d 418 (1969). Super. Ct.Cr.R. 43 provides in pertinent part:

> In prosecutions for offenses not punishable by death, the defendant's voluntary absence after the trial has been commenced in his presence shall not prevent continuing the trial to and including the return of the verdict.

The Supreme Court has held that in order for the trial court to find that a defendant's absence was voluntary, it is not necessary to show that the defendant had been "expressly warned by the trial court not only

7. The court noted two reasons underlying the right to be present:

(1) assuring nondisruptive defendants the opportunity to observe—and, it is to be hoped, to understand—all stages of the trial *not involving purely legal matters* generally incomprehensible to the layman in order to prevent the loss of confidence in courts as instruments of justice which secret trials would engender; (2) protecting the integrity and reliability of the trial mechanism by guaranteeing the defendant the opportunity to aid in his defense. [*United States v. Gre-*

*gorio, supra* at 1258–59; footnotes omitted; emphasis added.]

We would add one more obvious reason: the right of defendants to testify on their own behalf.

8. At most, Heiligh was absent for about fifteen minutes.

9. We note that jury instructions are usually discussed at the bench, when defendants, although present in court, can rarely be of aid to their counsel.

that he had a right to be present but also that the trial would continue in his absence." *Taylor v. United States*, 414 U.S. 17, 19, 94 S.Ct. 194, 196, 38 L.Ed.2d 174 (1973). Appellant was at liberty on bond and therefore had a duty as well as a right to be present at all stages of the trial. He was advised when the proceedings were to begin and volunteered no justification for his late arrival. In these circumstances, we find there was no error in the trial judge's proceeding to settle jury instructions within the presence of appellant. We do not mean to imply, of course, that the trial court should not concern itself about the absence of a defendant during the trial, even though purely legal discussions are then taking place.

### IV.

Heiligh next contends that because he did not appear in the hallway of the building in which the crime occurred until after the complainants' property had been taken and because he did not actually search any of the victims, there is insufficient evidence to support his conviction of assault with intent to commit robbery while armed. There is, however, ample evidence that Heiligh was an aider and abettor of the crimes alleged and thus he was properly found guilty of the acts charged. *Corbin v. United States*, D.C.App., 237 A.2d 466 (1968).[10]

Appellant also argues that there was insufficient evidence to convict him of assault with a dangerous weapon which occurred outside of the building as the defendants were making their getaway. There was testimony at trial, however, that Heiligh threatened the complainants as they attempted to follow their assailants. We find no error requiring reversal.

Finally, because we view the assault with a dangerous weapon as separate and distinct from the assault with intent to commit robbery while armed, the former

10. For example, it is not denied that within a moment or two of the initial search of the complainants, Heiligh appeared, said, "wait a minute," returned to the apartment from which

offense does not merge into the latter. *Dixon v. United States*, D.C.App., 320 A.2d 318 (1974). The assault by Heiligh occurred outside the building after the earlier crimes were completed and consequently was not a necessary element of the robbery or of the assault with intent to commit robbery while armed.

Accordingly, the judgments appealed from are

*Affirmed.*

he had emerged and came back out with a sawed-off shotgun. Appellant also was present in the basement of the building during a second search of the victims.