**Eddie DEVONE, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 13428.**

District of Columbia Court of Appeals.

Submitted March 6, 1979.

Decided April 27, 1979.

Scott Daniels, Washington, D. C., appointed by this court, was on the brief for appellant.

Earl J. Silbert, U. S. Atty., John A. Terry, Daniel A. DeRose and Paul N. Murphy, Asst. U. S. Attys., Washington, D. C., were on the brief for appellee.

Before NEWMAN, Chief Judge, and NEBEKER and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

A jury found appellant guilty of one count of robbery (D.C.Code 1973, § 22–2901) and the court sentenced him to a term of 5 to 15 years' imprisonment. On appeal he urges two grounds for reversal of his conviction. First, he asserts that reversible error was committed by the trial court when it forbade defense counsel from asking him during direct examination whether he felt he had been harassed by the police. Counsel was intending thereby to establish bias on the part of the arresting officer. Second, he contends that reversible error was committed by the court by its constructive amendment of the indictment when it instructed the jury that it could find appellant guilty if the evidence established a taking "by stealthy seizure," even though the indictment did not include such language. The indictment charged that the taking had been by force and violence. We reject both contentions and affirm appellant's conviction.

The only evidence of the robbery was provided by the testimony of the complainant, Lawrence Stone. He stated that at approximately 5:15 on the morning of August 28, 1977, appellant and three male companions began conversing with him while he was seated on the steps of a church at 14th and N Streets, N.W., waiting for a nearby restaurant to open. Appellant and two of his companions were female impersonators and were dressed in women's clothing at the time. The five men were chatting politely, but as Stone rose to leave for breakfast appellant suddenly grabbed him by the wrists, temporarily immobilizing him. One of the other transvestites also grabbed Stone. After a brief struggle, Stone freed himself from their grasps. Appellant and his friends then slipped away. Jones checked his pockets and noticed that $18 was missing, but he did not know which one of the group had taken the money. He chased appellant and the others, but as he approached them appellant turned around, reached into his pocketbook, extracted a jar, and threatened to throw lye on Stone's face. Stone continued to follow, but at a distance, because appellant kept threatening to throw lye on him. When Stone yelled to appellant that the police would be coming soon, appellant replied that the police could do nothing if they could not find the money. He thereupon summoned one of his companions and gave him the money. Discouraged at this point, Stone abandoned his pursuit and went home. He obtained more money and repaired to the restaurant for breakfast. Approximately two hours later, while walking home with a companion, he again saw appellant. Acting on the advice of his friend, Stone summoned a nearby police officer, Frederick Panzo, told the officer what had transpired earlier and pointed out appellant as the robber. Officer Panzo arrested appellant. At trial, the officer testified for the government.

The defense case consisted of the testimony of appellant and a friend, Luther Hines. Appellant told the jury that Stone was a homosexual lover of his, who shared his apartment on several occasions. By agreement, appellant said, Stone was to pay part of the cost of utilities on the apartment, but had failed to do so. On the morning of the alleged robbery Stone had given appellant $20 to buy liquor. Appellant did so for $2, but kept the $18 change as Stone's payment

for utilities. No struggle took place, according to appellant.

Hines, who was not involved in the alleged incident, testified that he had seen Stone, clad only in underwear, in appellant's bedroom in June 1977.

As part of his testimony during direct examination in the government's case-in-chief, Officer Panzo told the jury that Stone approached him on the street, related the events which had occurred earlier that morning, and pointed out appellant as the robber. The officer stated that Stone had mentioned at the time that $18 had been taken. Officer Panzo then described for the jury his arrest of appellant and his search of appellant and his pocketbook, which yielded $9 in bills and several plastic bottles containing a liquid.

During cross-examination by defense counsel, Officer Panzo stated that he had not been a witness to the robbery and did not know appellant at the time of arrest. The only objections raised by the prosecutor and sustained by the court during cross-examination were to questions which called for speculation by the officer. No questions relating to Officer Panzo's possible bias towards appellant were asked by defense counsel.

■■■ Appellant testified in his own behalf. He was asked by defense counsel, "Do you feel that you've been mistreated by the police?" The prosecutor objected to the relevancy of the question. Defense counsel claimed that the fact that the prosecution focused on the defendant was relevant to the case. The objection was sustained by the court because it found the evidence presented had clearly established that the prosecution had focused on appellant due to Stone's complaint to the police and not because of police harassment as suggested by defense counsel's argument on the objection. Appellant now contends that the purpose of the question, and the assumed affirmative response, was not only to demonstrate that his prosecution was an outgrowth of a generalized harassment by the police, but was also to provide a foundation for extrinsic proof of Officer Panzo's bias against him.

We sustain the court's ruling. Defense counsel's question sought a response as to how the witness felt about his treatment by the police. The feelings of a witness under ordinary circumstances at least, are wholly irrelevant. Generally, a witness must testify as to facts, and not as to his opinions. *See* McCormick, Evidence § 11 (2d ed. 1972). Officer Panzo was not a witness to the robbery and provided no evidence from which guilt could be found. As the arresting officer he merely enhanced the victim's credibility by relating his complaint which was the foundation for the arrest. The officer's impeachment could have had little, if any, impact on the issue of guilt.

Appellant also claims that the court erred when it instructed the jury they could reach a verdict of guilty if they found not only a taking by force and violence, but, alternatively, a taking "by sudden and stealthy seizure or snatching," whereas the indictment charged only that the defendant stole from the complainant by force and violence and putting in fear. The court's exact instruction to the jury in this regard was: "[T]o establish the second essential element of the offense, it's necessary that the possession of such property have been taken by force or violence, whether against resistance or by sudden and stealthy seizure or snatching or by putting in fear." Appellant now argues that by affording the jury the second alternative the court constructively amended the indictment to conform to the evidence.

■■■ We have no way of knowing that the jury concluded it was a theft by stealth and not one by force and violence, but we do know that appellant failed to object to the instruction so as to give the court an opportunity to more precisely conform the instruction to the indictment. Consequently, in view of Super.Ct.Cr.R. 30, which requires a party to object to an assertedly improper instruction before the jury begins to deliberate or forego the assignment of error, we may decline to consider the error asserted for the first time on appeal. *See*

*Watts v. United States*, D.C.App., 362 A.2d 706, 708 n.3 (1976) (en banc).

However, even if we should consider the propriety of the instruction we would still find no error for we cannot agree with appellant that there was no evidence that the money was taken "against resistance and by putting in fear." The testimony of Stone was that he was grabbed by both appellant and an accomplice, one from Stone's right side, one from his left, and that he had to forcibly wrestle himself free from their grasps. After this struggle Stone discovered his money was missing. The mere fact Stone neither saw nor felt the money being taken does not eliminate the force and violence aspect of the theft. As the United States Court of Appeals for the District of Columbia has held, "the requirement for force [in the robbery statute] is satisfied within the sense of the statute by an actual physical taking of the property from the person of another, even though without his knowledge and consent," *Turner v. United States*, 57 App.D.C. 39, 16 F.2d 535 (1926), followed with approval, *Jackson v. United States*, 123 U.S.App.D.C. 276, 359 F.2d 260 (1966). These decisions are binding on us, *M. A. P. v. Ryan*, D.C.App., 285 A.2d 310 (1971). We find no reversible error.

Accordingly, the judgment is

*Affirmed.*