**Norman N. ALLEN, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 82–798.**

District of Columbia Court of Appeals.

Argued En Banc Jan. 20, 1984.

Decided July 19, 1985.

Holly R. Skolnick, Washington, D.C., with whom A. Franklin Burgess, Jr., Public Defender Service, Washington, D.C., at the time the brief was filed, and James Klein, Public Defender Service, Washington, D.C., were on the briefs, for appellant.

Michael W. Farrell, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, Joseph E. diGenova, U.S. Atty., and Noel A. Kramer, Asst. U.S. Atty., Washington, D.C., were on the briefs, for appellee.

Before PRYOR, Chief Judge, and NEBEKER, MACK, NEWMAN, FERREN, BELSON and ROGERS, Associate Judges.

PRYOR, Chief Judge:

In the course of an unsuccessful direct appeal, appellant Norman N. Allen challenged, for the first time, the adequacy of jury instructions at his trial. Allen alleged that the absence of particular instructions, which he had not requested, compelled the finding that one of two assault convictions received was invalid. Because Allen did not urge this contention prior to jury deliberations, as required by court rule, the panel on direct appeal only considered his claim under the plain error standard and the convictions were affirmed. Allen then returned to the trial court and raised his claim once more, this time styled as a motion to correct an illegal sentence. He was denied relief and appealed once again to this court. Allen contended in this second appeal that a motion to correct an illegal sentence was an appropriate means to seek relief and also complained that the plain error rule, in the context of an instructional error raised initially on direct appeal, has been inconsistently applied by this court.

We heard argument on April 26, 1983. Because of the importance of the issue presented, we voted *sua sponte* to rehear the case en banc. *Allen v. United States*, No. 82–798 (D.C. Oct. 31, 1983) (order);[1] *see* D.C.App. Internal Operating Procedures, Part XI–J (1983) (initial en banc hearing appropriate if "the case is of exceptional importance"). We conclude, for reasons stated herein, that Allen's Rule 35 motion was properly denied, and that his convictions and sentence are not otherwise subject to attack in this proceeding. Moreover, we find that this court has applied the plain error rule consistently with respect to instructional challenges raised initially on direct appeal. We, therefore, affirm.

1. During oral argument, held on January 20, 1984, the parties agreed to file supplemental briefs.

I

At trial, the government's evidence showed that on January 23, 1979, Victor Halbmillion, sixty years old, awoke at 12:30 p.m. and prepared to start his day. When Halbmillion walked to the front of the house to check his mail, he noticed that a light, which was never used was lit and that several possessions were missing. A check of the front door revealed that someone had broken into the house.[2] Halbmillion called the Metropolitan Police Department and reported a burglary.

Before the police arrived, Allen entered Halbmillion's house through the broken front door. Upon seeing Halbmillion, he pulled out a pistol and demanded money and valuables. Before Halbmillion could satisfy this request, Allen struck his victim in the face with the pistol. Allen then commanded Halbmillion to get up from the floor, where he had fallen, and directed him towards the rear of the house.

In the kitchen, Allen searched unsuccessfully for some cord with which to bind Halbmillion and threatened to kill Halbmillion if his demands were not met. Halbmillion complained that the pistol whipping had hurt him, and that he was bleeding from the head. He told Allen that there were no valuables in the house. Apparently undeterred, Allen directed Halbmillion at gunpoint into a bedroom and began to search for valuables.

Halbmillion ran out of the bedroom, slamming the door behind him. Allen broke down the door, however, and caught Halbmillion. He forced Halbmillion into a hallway and again began to beat him with the pistol. It was alleged that Allen then struck his victim repeatedly with a "coat tree," a coat hanger, an ax, and an umbrella. Allen also kicked Halbmillion when he fell to the floor from the force of the attack.

Responding to Halbmillion's earlier call, Police Lieutenant Ernest Goodson and Officer John Gray arrived at the house. Upon seeing the officers approach, Allen grabbed the ax and ran to the rear of the house. He attempted to escape through a window, but was confronted by Goodson. Allen was arrested by Gray as he ran from the bedroom; a starter pistol was found in Allen's possession.

On February 14, 1979, Allen was charged by indictment with first-degree burglary while armed (imitation pistol), D.C. Code §§ 22–1801(a), –3202 (1981); assault with intent to commit robbery while armed (imitation pistol), id. §§ 22–501, –3202; assault with a dangerous weapon (imitation pistol, ax, coat hanger), id. § 22–502;[3] and three counts of possessing a dangerous weapon (imitation pistol, ax, coat hanger), id. § 22–3214(b).

Allen testified at trial. He claimed that his car had overheated on the day in question and that he had approached Halbmillion's house for water.[4] He alleged that Halbmillion assaulted him after answering the door, and he had merely defended himself. Allen admitted possessing the starter pistol.

Allen was found guilty of four of the indictment's six counts; he was acquitted of two counts of possessing a dangerous weapon (ax, coat hanger). He was sentenced to concurrent terms of ten to forty years imprisonment on the first-degree armed burglary and assault with intent to commit robbery counts. He was also sentenced to concurrent terms of five to fifteen years imprisonment for assault with a dangerous weapon (imitation pistol)[5] and

---

2. Halbmillion had earlier heard some "strong knocks," but could not tell where they came from due to his loss of hearing. He had not bothered to investigate since the neighborhood was usually noisy in the early afternoon.

3. Allen was not charged with assaulting Halbmillion with the coat tree or umbrella.

4. In addition, several police officers repeated statements that Allen had made in their presence as to why he was at the Halbmillion house.

5. The jury did not find that Allen had assaulted Halbmillion in the hallway with the ax or coat hanger.

one year imprisonment for possessing a dangerous weapon (imitation pistol)—to be served consecutively to the ten to forty year sentences. Allen noted his appeal.

By Memorandum Opinion and Judgment, a panel of this court affirmed the convictions and sentence despite numerous grounds urged in support of reversal. *See Allen v. United States,* No. 79–695 (D.C. Aug. 6, 1981) (unpublished). In particular, Allen had contended, for the first time on his direct appeal, that he was improperly convicted and consecutively sentenced for assault with intent to commit robbery while armed (imitation pistol) (hereinafter "AWICR") and assault with a dangerous weapon (imitation pistol) (hereinafter "ADW"). The gravamen of his contention was that the ADW conviction was a lesser-included offense of the AWICR conviction; therefore, its merger prevented separate convictions and sentences. Allen conceded that the government had introduced evidence sufficient to prove that the two counts stemmed from separate and distinct acts,[6] but argued that the finding of merger was nevertheless compelled because the trial court had not instructed the jury that, in order to find him guilty of both charges, they must first agree that two separate and distinct assaults had taken place. The absence of an appropriate instruction (hereinafter "*Bates* instruction"), *see Bates v. United States,* 327 A.2d 542, 547 (D.C. 1974); *see also Davis v. United States,* 367 A.2d 1254, 1270 (D.C.1976), *cert. denied,* 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 114 (1977), Allen asserted, prevented separate convictions. Citing, *inter alia,* double jeopardy concerns, Allen sought vacation of the ADW conviction and corresponding sentence.[7]

The government had argued on direct appeal that the convictions, based on separate and distinct acts, should stand. It was noted that Allen did not request a *Bates* instruction, did not object to the instructions that were given, and did not object when he was sentenced. This failure to act, it was urged, amounted to a forfeiture of the point on appeal. Furthermore, the government noted that the prosecutor had highlighted the separate evidence supporting each distinct count of the indictment for the jury during summation, and that this evidence compelled a finding of separate and distinct acts. After taking the case under advisement, the panel issued its judgment affirming Allen's convictions. In the final paragraph of its unpublished opinion, the panel stated:

> We do not reach the question of whether the conduct involved in the two charges was "separate and distinct," thus permitting conviction on each under *Bates v. United States,* D.C.App., 327 A.2d 542 (1974). Appellant has raised this issue for the first time on appeal and we thus need not and do not consider it.

*Allen v. United States, supra,* at 3.

Allen then filed a motion, pursuant to Super.Ct.Crim.R. 35(a), to correct his allegedly illegal sentence. Repeating the arguments offered on direct appeal,[8] he alleged that the sentence was illegal because the convictions in question should have merged. Upon consideration of the motion, the trial court ruled:

> The court has already concluded that there was ample evidence to support the

---

6. According to the evidence, the AWICR count was based upon Allen's first encounter with Halbmillion at the front door of the house, when he pulled out the starter pistol and demanded money and valuables; the ADW count was based upon the hallway incident, which occurred shortly before the police arrived, when Allen struck Halbmillion with the weapon as punishment for his victim's attempted escape.

7. Alternatively, Allen sought a new trial on the ADW charge.

8. Allen's Rule 35 motion noted that "[t]his issue was briefed before the Court of Appeals. The Court of Appeals expressed no opinion as to the merits of this issue." The motion quoted our memorandum opinion and concluded "[s]ince this issue concerns the imposition of an allegedly illegal sentence, it is [Allen's] position that the Court of Appeals was not ruling that the issue was waived. Rather, the court's opinion was that the issue had to be first litigated at the trial court level."

convictions as separate and distinct offenses. Obviously, there was sufficient evidence on each charge to go to the jury. Any objections to alleged defects in the court's instructions should have been raised at trial. This court cannot speculate as to possible defects in verdicts supported by the evidence. Moreover, it would appear from the record that this issue was briefed and argued in the District of Columbia Court of Appeals and the convictions were affirmed. A stronger showing is required on collateral attack than to warrant an order for a new trial on direct appeal. *See Session v. United States*, D.C.App., 381 A.2d 1 [, 2–3] (1979) [1977] (Yeagley, J., concurring).

The relief sought by Allen was, therefore, denied.

## II

Allen sought post-conviction relief under Super.Ct.Crim.R. 35(a) from what he alleged was an illegal sentence. The rule provides that "[t]he Court may correct an illegal sentence at any time...." Since this language is identical to FED.R.CRIM.P. 35(a), the interpretive gloss placed upon the federal rule by the federal courts guides our construction of the local rule. *McDaniels v. United States*, 385 A.2d 180, 181 n. 2 (D.C.1978) (per curiam); *see, e.g., Robinson v. United States*, 454 A.2d 810, 813 (D.C.1982).

We have held that an "illegal sentence" is one "at variance with the controlling sentencing statute," *Prince v. United States*, 432 A.2d 720, 721 (D.C.1981) (per curiam), or " 'illegal' in the sense that the court goes beyond its authority by acting without jurisdiction or imposing a sentence in excess of the statutory maximum provided...." *Robinson v. United States, supra*, 454 A.2d at 813. Allen's motion, however, did not challenge the sentence as illegal on either of these grounds. Rather, his contention was founded solely upon the precursory claim that, in the absence of a *Bates* instruction, the ADW conviction had merged with the AWICR conviction. Be-cause one of the *convictions* should have been vacated, it was urged, the resultant *sentence* was illegal and could be remedied under Rule 35.

A review of existing authority undercuts this position. It is settled that Rule 35 serves as a vehicle to challenge an illegal sentence; as such, it presupposes a valid conviction and may not, therefore, be used to challenge alleged errors in proceedings that occur prior to the imposition of sentence. *Hill v. United States*, 368 U.S. 424, 430, 82 S.Ct. 468, 472, 7 L.Ed.2d 417 (1962); *United States v. Hay*, 702 F.2d 572, 574 (5th Cir.1983); *United States v. Hamilton*, 553 F.2d 63, 65 (10th Cir.), *cert. denied*, 434 U.S. 834, 98 S.Ct. 122, 54 L.Ed.2d 96 (1977); *Gilinsky v. United States*, 335 F.2d 914, 916 (9th Cir.1964); *United States v. Lawrenson*, 298 F.2d 880, 888 (4th Cir. 1962); *Stegall v. United States*, 279 F.2d 872, 872 (6th Cir.1960); 8A MOORE'S FEDERAL PRACTICE ¶ 35.02[3][b][v], at 35–32 (1983); 3 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CRIMINAL 2d § 582, at 380, 385 (1982). Allen's argument, contrarily, presupposes that one of his convictions is *not* valid. Rule 35 does not, therefore, afford him a means of redress.

We are not persuaded to the contrary by *Heflin v. United States*, 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959); *United States v. Golay*, 560 F.2d 866 (8th Cir. 1977); and *Bayless v. United States*, 288 F.2d 794 (9th Cir.1961) (per curiam), cases which Allen cites. In *Heflin v. United States, supra*, 358 U.S. at 416, 79 S.Ct. 452, the appellant was convicted and sentenced consecutively under, *inter alia*, two sections of the Federal Bank Robbery Act for taking property by force and violence and receiving the same property. The Court reversed the sentence under Rule 35, holding it "illegal on its face," because the robbery was a *single* act sufficient to support only one conviction, not two. *Id.* at 419–20, 79 S.Ct. at 453–54 (citing *Prince v. United States*, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957)). Similarly, in *United*

*States v. Golay, supra,* 560 F.2d at 869 & n. 3, the appellee was convicted under the Hobbs Act and the Federal Bank Robbery Act for a *single* act of robbery through extortionate means. While the court found appellee's convictions supportable, it held that the trial court improperly sentenced under both statutes. *Id.* at 869–70. The "pyramiding of penalties" for a single transgression [9] was found to be unintended by Congress; therefore, the sentence under the Hobbs Act was vacated. *Id.* at 870.[10] Finally, in *Bayliss v. United States, supra,* appellant charged that one count of a three-count indictment, which arose from a *single* illegal act, had merged and that, therefore, his sentence was improper. The court noted that, under *Heflin v. United States, supra,* relief was available, but concluded that it would be denied because the counts—all founded upon "distinctly different" acts—had not in fact merged. *See Bayless v. United States, supra,* 288 F.2d at 795 (citations omitted).

Contrary to Allen's apparent reading, these cases do not hold that Rule 35 is available to challenge any sentence that arguably raises double jeopardy problems. Rather, the cases cited involved prosecutions of *single* illegal acts under multiple statutes, and called upon the courts to resolve questions of statutory ambiguity concerning the pyramiding of additional penalties for the same proscribed conduct. Plainly, this is not the situation here.

The issue presented by the instant case involves a matter of proof, not statutory ambiguity. Allen has long since conceded that the prosecutor introduced sufficient evidence at the trial to support two convictions, based upon *two* separate and distinct assaults. He admits that the convictions would not merge if the jury had been expressly instructed under *Bates v. United States, supra.* The sentence itself, which is not in excess of the statutory limit and was entered by the court with jurisdiction over the case, is not illegal simply because the jury instructions may have been inadequate. It may not, therefore, be attacked on that ground under Rule 35. *See Johnston v. United States,* 331 F.2d 997, 998–99 (10th Cir.1964) (per curiam). The denial of the Rule 35 motion was not error.

### III

Allen's complaint is, in reality, a challenge to his conviction on the ADW count. The linchpin of Allen's argument is that it was error for the court to omit a *Bates* instruction from its charge to the jury. For if the jury had been given such an instruction, it is conceded, separate convictions for AWICR and ADW would be appropriate. Since Allen did not request a *Bates* instruction, his position must be that the court should have given the instruction *sua sponte.*

 The trial court has no general duty to instruct the jury *sua sponte. Johnson v. United States,* 387 A.2d 1084, 1088 (D.C.1978) (en banc). It is counsel's responsibility to request that the court give desired instructions. Super.Ct.Crim.R. 30 sets forth the procedural guidelines for requesting and challenging jury instructions:

At the close of the evidence or at such earlier time during the trial as the Court reasonably directs, any party may file written requests that the Court instruct the jury on the law as set forth in the requests. At the same time, copies of such requests shall be furnished to adverse parties. The Court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the Court shall instruct the jury after the arguments are completed. *No*

---

**9.** The *Golay* court applied the familiar test of *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), to determine that the double sentence imposed violated the Double Jeopardy Clause. *See United States v. Golay, supra,* 560 F.2d at 869.

**10.** Also pursuant to Rule 35, the *Golay* court remanded for resentencing under the Federal Bank Robbery Act because the trial court had failed to instruct the jury on the elements of the section under which the appellee was sentenced. *See id.* 560 F.2d at 870–71.

*party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.* Opportunity shall be given to make the objection out of the hearing of the jury and, on request of any party, out of the presence of the jury. [Emphasis added.] *See also* FED.R.CRIM.P. 30; ABA Standards Relating to Trial by Jury § 4.6 (Approved Draft 1968). The reasons for the italicized portion of the rule are manifest: "to afford the trial court an opportunity to correct any instructional defect and thereby avoid error which otherwise might necessitate a new trial," and "to discourage the intentional withholding of objections by defense counsel." *Watts v. United States,* 362 A.2d 706, 708–09 (D.C.1976) (en banc). Allen failed at trial to comply with the rule, and through this default, forfeited[11] his right to have this court consider on direct appeal the "merits" of his claim under the court's regular standard of review: whether the failure to give a *Bates* instruction was error, and if so, whether it was harmless error, under *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed.2d 1557 (1946).[12] Because Allen did not comply with Rule 30, the court on direct appeal limited its consideration to whether the omission of a *Bates* instruction

constituted plain error affecting substantial rights. D.C. Code § 11–721(e) (1981); *see also Young v. United States,* — U.S. —, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1985); FED.R.CRIM.P. 52(b). Under the plain error rule, only error "so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial" warrants reversal. *Watts v. United States, supra,* 362 A.2d at 709. Plain error review serves to make the failure to comply with the rules governing the time for objection costly by necessitating a greater showing of harm than that required to obtain relief under the harmless error standard. *See generally* 8A MOORE'S FEDERAL PRACTICE, *supra,* ¶ 30.04[3].

■ Allen urges that his default should not have limited review by the panel on direct appeal to a plain error review because review under this higher standard is not uniformly enforced in this jurisdiction whenever defaults occur. In essence, he argues that the plain error rule is invoked arbitrarily. We find this argument unpersuasive.

Our review of the cases involving Rule 30 defaults leads us to conclude that the rule *is* uniformly enforced in situations such as Allen's. In other words, a failure to offer a timely objection to jury instructions inevitably triggers plain error review

---

**11.** In contrast to a waiver, which is "an intentional relinquishment or abandonment of a known right or privilege," *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), "a defendant can forfeit his defenses without ever having made a deliberate, informed decision to relinquish them.... Unlike waiver, forfeiture occurs by operation of law without regard to the defendant's state of mind." Westen, *Away From Waiver: A Rationale for the Forfeiture of Constitutional Rights In Criminal Procedure,* 75 MICH.L.REV. 1214, 1214 & n. 1 (1977).

**12.** *See* Hill, *The Forfeiture of Constitutional Rights in Criminal Cases,* 78 COLUM.L.REV. 1050, 1091 (1978) (discussing effect of timely objection on scope of review during direct appeal and collateral attack).

The *Kotteakos* standard of review is as follows:

If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand.... But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

*Kotteakos v. United States, supra,* 328 U.S. at 764–65, 66 S.Ct. at 1247–48.

on direct appeal. *E.g., Jones v. United States*, 477 A.2d 231, 242 (D.C.1984) (failure to instruct on limited use of "other crimes" evidence); *Carter v. United States*, 475 A.2d 1118, 1125 (D.C.1984) (erroneous "use of deadly force" instruction); *Devone v. United States*, 401 A.2d 971, 973–74 (D.C.) (unchallenged instruction allegedly amended indictment), *cert. denied*, 444 U.S. 876, 100 S.Ct. 160, 62 L.Ed.2d 104 (1979); *Carmichael v. United States*, 363 A.2d 302, 304 & n. 3 (D.C.1976) (unchallenged lesser-included offense instruction); *cf. Jefferson v. United States*, 474 A.2d 147, 149 (D.C.1984) (comment by trial court); *Adams v. United States*, 302 A.2d 232, 234–35 (D.C.1973) (allegedly illegal identifications); *Bunter v. United States*, 245 A.2d 839, 841–42 (D.C.1968) (failure to challenge alleged illegally seized evidence). When a Rule 30 default occurs, "an appellant bears the heavy burden of showing that the [jury] instructions as given 'were so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial.'" *Fields v. United States*, 396 A.2d 522, 525 (D.C.1978) (quoting *Watts v. United States, supra*, 362 A.2d at 709). Thus, because of Allen's failure to comply with the requirements of Rule 30, the panel was limited to conducting a plain error review of the alleged error in instruction.

As noted, the plain error standard is a higher hurdle for an appellant seeking reversal than is the harmless error standard. Allen was thereby penalized for his failure to comply with Rule 30. The penalty in practice is that, even if an error is not harmless, it might nevertheless not justify reversal as plain error. 8A MOORE'S FEDERAL PRACTICE, *supra*, ¶ 30.04[3]. We have refused to find plain error, for example, when limiting instructions have been omitted erroneously, *Jones v. United States, supra*, 477 A.2d at 242–43 (other crimes); *Turner v. United States*, 443 A.2d 542, 549–50 (D.C.1982) (impeachment evidence); *Green v. United States*, 440 A.2d 1005, 1008 (D.C.1982) ("surrounding circumstances" evidence); *Fields v. United States, su-*

*pra*, 396 A.2d at 526 (expert, accomplice testimony); *Bennett v. United States*, 375 A.2d 499, 503–04 (D.C.1977) (hearsay), when lesser-included offense instructions have been given erroneously, *Lightfoot v. United States*, 378 A.2d 670, 673–74 (D.C. 1977), or when the jury was not instructed on an element of the charged offense, *Hall v. United States*, 383 A.2d 1086, 1088–90 (D.C.1978); *see United States v. Baker*, 224 U.S.App.D.C. 68, 71–72, 693 F.2d 183, 186–87 (1982).

■ In this regard, the Supreme Court has stated that "[i]n exceptional circumstances, especially in criminal cases, appellate courts, in the public interest, may, of their own motion, notice errors to which no exception has been taken, if the errors are obvious, or if they otherwise seriously affect the fairness, integrity or public reputation of judicial proceedings." *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936); *see also Young v. United States, supra*, 105 S.Ct. at 1046–47. This statement of the plain error rule, which is similar to our *Watts* articulation, helps to explain why instructional errors not raised at trial will not be distrubed on appeal if, for example, evidence of guilt is overwhelming, *Green v. United States, supra*, 440 A.2d at 1008; *Hall v. United States, supra*, 383 A.2d at 1090; *cf. Bunter v. United States, supra*, 245 A.2d at 842 (illegally seized evidence), or counsel's failure to object can be viewed as a tactical choice. *See Jones v. United States, supra*, 477 A.2d at 242; *Bennett v. United States, supra*, 375 A.2d at 504. For in such cases, it can hardly be maintained that the alleged error effected a "miscarriage of justice." *Adams v. United States, supra*, 302 A.2d at 234.

■ Conversely, the strong language of the plain error rule also facilitates appreciation of why certain instructional errors, which touch upon fundamental constitutional principles or call into question the integrity of the verdict, *will* constitute plain error. For example, in cases where

there is particular danger of "jury confusion," a *sua sponte* instruction may be required. *See generally Dixon v. United States,* 287 A.2d 89, 99 (D.C.), *cert. denied,* 407 U.S. 926, 92 S.Ct. 2474, 32 L.Ed.2d 813 (1972). Similarly, where the jury may not have been unanimous in its verdict, plain error has been found. *Davis v. United States,* 448 A.2d 242, 244 (D.C.1982) (per curiam); *Hawkins v. United States,* 434 A.2d 446, 449 (D.C.1981).[13] When the instructions concerning the constitutional cornerstone of guilt beyond a reasonable doubt have been ambiguous, again, plain error has been found. *United States v. Alston,* 179 U.S.App.D.C. 129, 130, 132–33, 551 F.2d 315, 316, 318–21 (1976); *see* 8A MOORE'S FEDERAL PRACTICE, *supra,* ¶ 30.-04[1], at 30–26 (unconstitutional instruction on element of offense). Finally, plain error exists if the error that occurred at trial simply could not have been cured by an immediate objection. *See Fields v. United States, supra,* 396 A.2d at 528 (prosecutorial misconduct during cross-examination of defendant). For in such an instance, "it would make no sense for us to weigh against appellant his failure to object below, under circumstances in which timely objection could not correct the harm done." *Id.*[14]

We review in detail the application of the plain error standard to Rule 30 defaults in order to place the language in the panel's decision, with respect to Allen's assertion of instructional error, in the appropriate perspective. In addressing appellant's contention that plain error review is applied arbitrarily, we acknowledge that the language used in our decisions discussing plain error in this context has not been consistent. Nevertheless, we find that the substantive application of the rule has been consistent and not arbitrary.

In previous cases, we have expressly observed that this court *will review* an instructional challenge raised initially on direct appeal, but only under a plain error standard. *See, e.g., Morris v. United States,* 469 A.2d 432 (D.C.1983); *Hawkins v. United States, supra,* 434 A.2d at 449; *Gilbert v. United States,* 395 A.2d 1 (D.C. 1978); *Hall v. United States, supra.* However, in a number of cases we have characterized our approach differently. In those cases, we have stated that this court has the discretion not to consider an instructional challenge, raised for the first time on direct appeal. *See, e.g., Devone v. United States, supra,* 401 A.2d at 973; *Headen v. United States,* 373 A.2d 599, 602 (D.C.1977); *Carmichael v. United States, supra,* 363 A.2d at 304 & n. 3; *Anthony v. United States,* 361 A.2d 202, 204 (D.C. 1976). In practice, this language is just another means of expressing the same principle. Its use typically indicates that the court *did* consider the merits of appellant's claim and found no plain error in the trial court's failure to give a particular instruction, and therefore no grounds for reversal. For example, in *Devone,* where we said "we may decline to consider the [instructional] error asserted for the first time on appeal," we cited *Watts,* thereby showing that we were applying the plain

---

**13.** The instant case is distinguishable from *Davis v. United States, supra,* and *Hawkins v. United States, supra.* In each of those cases, the prosecutor shifted the theory of the case to allow one of *two* incidents to support a *single* guilty verdict. In such a context, the courts' instructions failed to insure " 'substantial agreement as to just what [the] defendant[s] did as a step preliminary to determining whether [they] were] guilty of the crime[s] charged.' " *Hack v. United States,* 445 A.2d 634, 641 (D.C.1982) (quoting *United States v. Gipson,* 553 F.2d 453, 457–58 (5th Cir.1977)). In the instant case, although a *Bates* instruction was not given, it is evident that *two* incidents were offered to support *two* assault convictions. Allen has failed to provide any "convincing evidence that the jury was not in substantial agreement about [his] actions...." *Gordon v. United States,* 466 A.2d 1226, 1234 (D.C.1983); *see also Burrell v. United States,* 455 A.2d 1373, 1379–80 (D.C.1983).

**14.** *Cf.* Westen, *supra* note 11, at 1236–39, 1256–61, where the author argues that a defendant should never be deemed to have waived a constitutional defense that the state is incapable of defeating, because the state has no justifiable interest in incarcerating those with "complete" constitutional defenses.

error standard of review. *Devone v. United States, supra,* 401 A.2d at 973–74.

■ We take this opportunity to make clear that under plain error review, this court necessarily must consider as part of such a review the merits of a challenge to instructions raised for the first time on appeal. However, while this court will consider such a challenge, we reiterate that an instructional error raised initially on direct appeal will constitute reversible error only where the error complained of is so clearly prejudicial to the complainant's substantial rights as to jeopardize the very fairness and integrity of the trial.

Upon review of this matter, we conclude, for the reasons stated above, that on this record it is implicit in the language of the panel's decision that the court considered the merits of appellant's claim and found no plain error in the trial court's failure to give a *Bates* instruction *sua sponte.*[15]

Accordingly, we affirm the trial court's denial of appellant's Rule 35 motion.

*So ordered.*

MACK, Associate Judge, dissenting:

The majority's position, stated simply, is that in ruling on Allen's direct appeal a division of this court did consider Allen's claim that two of the offenses charged in the indictment merged,[1] and rejected this claim, finding no plain error. The court also holds that even if the division had not considered this issue, Allen would have been foreclosed from raising it subsequently by way of a Rule 35 motion. Since I believe that the first conclusion is wrong as a matter of fact, and the second as a matter of law, I must dissent.

Allen was convicted of, *inter alia,* assault with intent to commit robbery—while armed with an imitation pistol—and assault with a deadly weapon (using the same imi-

tation pistol). Under our case law, normally these two offenses would merge, requiring vacation of one of the convictions. *E.g., Leftwich v. United States,* 460 A.2d 993, 997 & n. 3 (D.C.1983). Instead, the trial court imposed consecutive sentences.

On his direct appeal Allen urged this court to reverse and remand to the trial court with instructions to vacate one of the convictions. The government maintained that by charging Allen separately with assault with intent to commit robbery while armed (AWICRw/A) and assault with a dangerous weapon (ADW), it intended to refer to separate confrontations between Allen and the complainant, and that consecutive sentences were appropriate because the government had introduced distinct evidence in support of each count. The government so claimed even though the indictment makes no such distinction between the two counts, and the judge did not instruct the jury that each count was supported by separate facts. Allen contended that from the face of the indictment and the jury verdict there is no way to be sure that the jury understood that the two counts referred to separate incidents; and given the fact that no attempt was made by the trial court to separate out for the jury the evidence relating to each count, by way of an instruction, the jury may well have simply cumulated the evidence and returned verdicts of guilty on the two counts based on the same evidence. In those circumstances, the imposition of consecutive sentences on the two counts was error. The government responded that the burden was upon Allen to seek an instruction that would insure that the jury understood that separate incidents were involved. It urged the division on direct appeal to find no plain error in the trial court's failure sua sponte so to instruct the jury.

---

**15.** In light of our determination that the panel on direct appeal found no plain error in the trial court's jury instructions, even assuming we were to construe appellant's illegal sentence claim as a § 23–110 motion, we would not embark on § 23–110 consideration because appel-

lant has raised no new facts or novel legal grounds in support of this claim.

**1.** *Allen v. United States,* No. 79–695 (D.C. Aug. 6, 1981) (unpublished).

In a Memorandum Opinion and Judgment affirming Allen's conviction, this court refused to grant the requested relief, on the following grounds:

> We do not reach the suggestion of whether the conduct involved in the two charges was "separate and distinct," thus permitting conviction on each under *Bates v. United States,* 327 A.2d 542 (D.C.1974). Appellant has raised this issue for the first time on appeal and we thus need not and do not consider it.

By its plain language the division indisputably—and erroneously—decided that it did not even have to entertain Allen's claim. The majority's conclusion to the contrary here—that by use of the language "we thus need not and do not consider" the issue, what the division *meant* to say is that it actually *had* considered the claim but rejected it—is certainly convenient, but turns clear language on its head.[2] Since, according to the majority, this court disposed of the claim on the merits on the direct appeal, there is no avenue open to Allen for a collateral attack upon the sentence or the underlying convictions on this basis. Resting upon a faulty premise, this jerry-built conclusion is both unsound and unfair.

The majority goes on to say that even if the issues had not been addressed by the division in its opinion on the direct appeal, this court could not now consider it in any event, because Allen has used the wrong vehicle to raise the question. Allen challenged the imposition of consecutive sentences for the AWICRw/A and ADW convictions by way of a Rule 35(a) "motion to correct illegal sentence" filed with his sentencing judge following his direct appeal. In its discussion of this issue, the majority does not mention our decision in *Harling v. United States,* 460 A.2d 571, 572, 574 (D.C. 1983), in which we entertained a challenge by way of an appeal from a denial of a Rule 35 motion to the imposition of consecutive sentences for ADW and armed robbery, and we vacated the ADW conviction. The majority distinguishes a multitude of similar cases, stating that they all involved dual convictions based on a single act. This is a distinction without a difference, since this is precisely what Allen is contending—that an uninstructed jury returned two convictions based upon a single, undifferentiated, mass of evidence, and very possibly upon a single event, and that the two convictions therefore merged. The idea that we may only entertain these merger questions through the vehicle of a Rule 35 motion when the government concedes *in advance* that the evidence is undifferentiated, which the majority seems to imply by its holding, not only is unworkable but would require mind-reading skills from the defendant and his counsel.

Putting aside the question of the appropriateness of the Rule 35 vehicle, it is indisputable that we are not bound by the title of the motion and that we may consider it as filed under our collateral attack statute, D.C. Code § 23–110 (1981). We interpret that statute by reference to the parallel federal law, 28 U.S.C. § 2255 (1982),[3] and in construing that law the Supreme Court has held that a cognizable claim incorrectly asserted by way of a Rule 35 motion must be considered by the court under the collateral attack statute instead, for "in this area of the law ... 'adjudication upon the underlying merits of claim is not [to be] hampered by reliance upon the titles petitioners put upon their documents.'" *Andrews v.*

---

2. The majority then feels obliged to "place the language in the panel's decision" in the "appropriate perspective," *ante* at 1153, and devotes a considerable part of its opinion to a convoluted justification of the division's alleged application of the plain error standard to Allen's claim. Unfortunately, it is impossible to discern from the panel's opinion the application of *any* standard of review, let alone a plain error standard, on the direct appeal.

3. *Gregg v. United States,* 395 A.2d 36, 39 (D.C. 1978); *Pettaway v. United States,* 390 A.2d 981, 984 (D.C.1978); *Gibson v. United States,* 388 A.2d 1214, 1215 n. 3 (D.C.1978); *Hurt v. St. Elizabeths Hosp.,* 366 A.2d 780 (D.C.1976). *See also Swain v. Pressley,* 430 U.S. 372, 375, 97 S.Ct. 1224, 1226, 51 L.Ed.2d 411 (1977) (§ 23–110 and § 2255 procedures are comparable).

*United States,* 373 U.S. 334, 338, 83 S.Ct. 1236, 1239, 10 L.Ed.2d 383 (1963) (holding that lower court was obliged to consider motion filed under Rule 35 as filed under § 2255, rather than reject it).[4] Because Allen contends that the consecutive sentences imposed here by the trial court were based on a single event, or series of events, he may attack his sentence under our collateral attack statute as "imposed in violation of the Constitution of the United States or the laws of the District of Columbia" or as "in excess of the maximum authorized by law," D.C. Code §§ 23–110(a)(1), –110(a)(3). Since this is not a case in which the appellant failed to raise the issue on his direct appeal, but instead presents a unique case of erroneous failure by this court to consider an asserted claim, I believe that the correct standard of review at this point must be the "plain error" standard rather than some more stringent test.

Reaching the merits, the conclusion is inescapable that the jury was given no hint that the AWICRw/A and ADW counts represented separate incidents. As the majority notes, the issue here "involves a matter of proof," *supra* at 1150; and the government contends that after adducing proof of two incidents for the jury—an initial assault in the complainant's hallway with an imitation pistol, followed by a second, later assault with the pistol, along with a coat hanger and an axe—it connected each incident separately to the AWICRw/A and ADW counts. In other words, the government maintains that it was clear to the jury that the AWICRw/A count referred only to the first assault where only an imitation pistol was used, and that the ADW count referred to the incident a few minutes later, in which multiple weapons were used. A review of the record reveals not only that this assertion is false, but that the government's presentation confused even the trial judge, who based his instructions

to the jury on both the AWICRw/A and ADW counts on the *same* underlying evidence until corrected by the government. At the risk of being tedious, I think it necessary to detail the circumstances surrounding what the majority describes as a mere "instructional error." In explaining the AWICRw/A count, the trial judge said:

> Now, here, ladies and gentlemen, the Government relies upon several types of assaults, the striking with the pistol or the imitation pistol, the alleged striking with the ax, the hanger..... [Y]ou may consider in regards to this charge whether any weapon was used....

The government then objected, stating that it intended the AWICRw/A to encompass only assault with an imitation pistol, and that the indictment mentioned only an imitation pistol as the weapon used in this count. An imitation pistol was used in both incidents, however, and the government's objection to the court's instruction was not based on the fact that the AWICRw/A count was intended only to encompass the "first" assault. Moreover, it is plain from the trial judge's response and his corrected instruction that he did not understand the government to be objecting on this basis. The court first correctly noted that the AWICRw/A count in the indictment is "ambiguous"; it does not refer to the first assault and it plausibly could be read to encompass both assaults, inasmuch as the language used is assault with intent to commit robbery while "armed with a dangerous weapon, that is, an imitation pistol." As the Judge pointed out, the indictment "doesn't necessarily say that the assault was committed with a pistol." It could be read to cover assaults with other weapons, as the Judge initially construed it, and therefore to cover the second of the government's two incidents as well, where weapons other than an imi-

---

4. *See also Hill v. United States,* 368 U.S. 424, 430, 82 S.Ct. 468, 472, 7 L.Ed.2d 417 (1962) (§ 2255 petition considered as brought under Rule 35); *Duggins v. United States,* 240 F.2d 479,

484 (6th Cir.1957) (same); *United States v. Hay,* 702 F.2d 572, 573–74 (5th Cir.1983) (§ 2255 petition considered as application for writ of coram nobis).

tation pistol were employed. The court went on to instruct the jury as follows: [S]ince this is the Government's indictment, I will modify my instructions with respect to the assault to commit robbery while armed. The Government is contending, ladies and gentlemen, on this count, that the assault—or, it's pitching its case on the assault solely on the use of the pistol, no other weapon, with respect to this particular charge.... Now, I'm constrained to tell you, therefore, that with regard to assault with intent to commit robbery while armed, this charge does not include the use of any other weapon or instrumentality. So, it must stand or fall on the use of the pistol or the imitation pistol.

It is apparent that the court at this point was still laboring under what the government must term a "misconception": that the AWICRw/A count encompassed the entire sequence of events, involving separate assaults with three different weapons, but that the government had chosen for some reason to "stand or fall" on the use of the imitation pistol—whether during the "first" or "second" assault—in this count. The court's "confusion" on the question of the relation of the AWICRw/A count to the evidence, however, was a true reflection of an ambiguous indictment and an ambiguous presentation by the government. In addition, the court's understanding of the government's case, as reflected in its instructions, mirrors the jury's likely misperception of the relationship between the counts and the evidence.

In considering claims identical to Allen's, we have held that although two convictions of this type would normally merge as a matter of law, we will not find merger if two conditions are satisfied: first, the two counts in the government's indictment must clearly charge the defendant with criminal acts arising out of two distinct incidents; and second, the trial court must instruct the jury that the two counts represent independent offenses, distinct in time and circumstances. *Davis v. United States*, 367 A.2d 1254, 1270 (D.C.1976), *cert. denied*, 434 U.S. 847, 98 S.Ct. 154, 54 L.Ed.2d 114 (1977); *see Bates v. United States*, 327 A.2d 542, 547 (D.C.1974); *Dixon v. United States*, 320 A.2d 318, 321 (D.C.1974). This approach is necessary to foreclose the possibility that the jury will inadvertently return two convictions based on identical conduct, representing in effect but a single offense, and in addition to insure that the jury will be unanimous as to the predicate facts underlying each separately charged incident.

Neither one of the *Davis* conditions is satisfied here. The indictment does not charge separate incidents, and the trial court did not instruct on separate incidents because it did not understand this to be the government's position. The majority concedes that "in cases where there is particular danger of 'jury confusion,' a sua sponte instruction may be required." *Ante* at 1152. It apparently has overlooked the fact that the overriding issue in this case is that very danger.

The government would have this court shift the entire burden to meet the *Davis* responsibility to the defendant. I believe that both the government and the trial court bear corresponding burdens, and that their failure to meet their respective obligations in this case, with the result that appellant may well have been sentenced twice for the same conduct, rises to the level of plain error. I accordingly dissent.